IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HARRY M.M.[1],

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil No. 22-1445 (GLS)

## OPINION AND ORDER

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 11. The Commissioner opposed. Docket No. 16. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c). Docket No. 6. After careful consideration of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **REVERSED** and the case is **REMANDED** for further administrative proceedings consistent with the Court's opinion.

### I.    Procedural Background

Plaintiff worked as a door-to-door sales representative from 2005-2006 and insurance sales agent from 2006-2014. Tr. 98, 117-121.[2] Plaintiff filed an application for disability insurance benefits claiming that, as of August 15, 2014, the following conditions limited his ability to work: scoliosis, sleep apnea, depression, anxiety, attention deficit with hyperactivity disorder ("ADHD"), panic attack, plantar fasciitis, and high blood pressure. Tr. 618-19, 721. The application was denied initially and upon reconsideration. Tr. 618-38, 640-59. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on April 29, 2021, a hearing was held

---

[1]    Plaintiff's last name is omitted for privacy reasons.

[2]    "Tr." refers to the transcript of the record of proceedings.

via telephone before ALJ Livia Morales. Tr. 106-36. Plaintiff appeared *pro se*. He testified. Id. Vocational Expert Luisa Seuss testified at the hearing. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of August 15, 2014, through December 31, 2020, the last date insured. Tr. 100. Plaintiff asked the Appeals Council to review but the request was denied on August 20, 2022 (Tr. 1-9), rendering the Commissioner's decision the final decision for review by this Court. On September 13, 2022, Plaintiff initiated this action and both parties filed memoranda in support of their positions. Docket Nos. 1, 11, 16.

## II.     Legal Framework

### A.     Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P,

App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

B.     **Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the

Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Secretary, 819 F.2d 1, 3 (1st Cir.1987).

### III.   Discussion

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2014, the alleged onset of disability. Tr. 91. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): cervical spine disorder, bilateral carpal tunnel syndrome, obstructive sleep apnea, and right hip degenerative joint disease. Tr. 91. The ALJ further found that Plaintiff had impairments that were not severe because they did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 91-92. The non-severe impairments were Plaintiff's high blood pressure, obesity, plantar fasciitis, fibromyalgia, allergic rhinitis, thoracic and lumbar spine disorders, sacroiliitis, mild intimal thickening of carotid artery, mild left aortic enlargement, mild mitral valve regurgitation, and knee inflammation. Tr. 91-92.

The ALJ further found that Plaintiff's major depressive disorder, ADHD, generalized anxiety disorder, and panic attacks were non-severe under 20 C.F.R. § 404.1520a(d)(1) after considering four broad areas of mental functioning, known as the "paragraph B criteria:" (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves (Tr. 24). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The ALJ determined that Plaintiff's medically determinable mental impairments caused no more than mild limitations in his ability to perform basic mental work activities and were therefore non-severe. Tr. 91-92. To reach this conclusion, the ALJ generally cited to Plaintiff's medical records from Dr. Pedro Yapor Nuñez (pulmonary and critical care medicine; sleep laboratory); Dr. Sandra Soto Aponte (general medicine); Dr. Carlos Buxo (pain medicine specialist); a CT scan from Plaintiff's cervical spine; Dr. Isabel Cestero (internist); a pulmonary medical report; Dr. María González (physiatrist); APS Clinics' psychiatrist progress notes; a radiology report from Plaintiff's right foot; and the Function Reports completed by Plaintiff. Tr. 92 (ref. to Exhibits 4F, 5F, 6F, 13F, 14F, 15F, 16F, 17F, 18F,

20F, 5E, 9E). But, as discussed more fully below, despite a general reference to Plaintiff's mental health records (Tr. 92, first sentence), the ALJ's findings as to the severity of Plaintiff's mental health conditions were primarily based on the records of non-mental health physicians.

In the first area of functioning, the ALJ found that Plaintiff had a mild limitation because the medical records demonstrated that he did not have difficulty understanding or following instructions. Tr. 92. The ALJ noted that, when Plaintiff attended medical examinations, he demonstrated an ability to follow instructions, comply with treatment, concentrate, and pay attention. Tr. 92. The ALJ cited medical evidence from the following physicians: Dr. Pedro Yapor Nuñez (pulmonary and critical care medicine; sleep laboratory); Dr. Sandra Soto Aponte (general medicine); Dr. Carlos Buxo (pain medicine specialist); Dr. Isabel Cestero (internist); and Dr. María González (physiatrist). The ALJ also cited to a progress note from a psychiatrist at APS Clinic as well as a radiology report from Plaintiff's right foot, a pulmonary medical report, and a CT scan from Plaintiff's cervical spine. Tr. 92 (ref. to 334-86; 579-89; 590-606; 607-10; 948-94; 1048-75; 1263-67; 1268-796; 1277-80; 1317). The ALJ noted that Plaintiff reported not needing help in taking care of himself, handling his bank accounts, and grocery shopping. Tr. 92 (ref. to 214-21; 230-37). Plaintiff, however, reported needing help taking his medicines. Id. The ALJ did not refer to notes as to Plaintiff's mental health on the record.

As to the second area of functioning, the ALJ concluded that Plaintiff presented no limitation because the record showed that Plaintiff was "cooperative and well-behaved." Tr. 92. The ALJ, once again, cited to Dr. Pedro Yapor Nuñez (pulmonary and critical care medicine; sleep laboratory); Dr. Sandra Soto Aponte (general medicine); Dr. Carlos Buxo (pain medicine specialist); Dr. Isabel Cestero (internist); Dr. María González (physiatrist); APS Clinics' psychiatrist progress notes; a radiology report from Plaintiff's right foot; a pulmonary medical report; and a CT scan from Plaintiff's cervical spine. Id. (ref. to 334-86; 579-89; 590-606; 607-10; 948-94; 1048-75; 1263-67; 1268-796; 1277-80; 1317). The ALJ credited Plaintiff's assertion that he got along with family, friends, and neighbors. Tr. 92 (ref. to 214-21; 230-37).

In the third functional area, the ALJ found that Plaintiff had mild limitation because during doctor visits, "[he] showed no difficulties with memories, attention, and concentration." And he reported driving a car when needed, shopping for groceries, and paying utility bills. Tr. 92 (ref. to 214-21; 230-37, 334-86; 579-89; 590-606; 607-10; 948-94; 1048-75; 1263-67; 1268-796; 1277-80; 1317).

Finally, as to the fourth functional area, the ALJ concluded that Plaintiff had no limitation. Plaintiff reported no difficulty in taking care of himself. Tr. 92 (ref. to 214-21; 230-37). The ALJ noted that Plaintiff was observed to have been properly dressed. And that the record contained no evidence establishing that Plaintiff struggled with emotions or self-control. Again, the ALJ cited to Dr. Pedro Yapor Nuñez (pulmonary and critical care medicine; sleep laboratory); Dr. Sandra Soto Aponte (general medicine); Dr. Carlos Buxo (pain medicine specialist); Dr. Isabel Cestero (internist); Dr. María González (physiatrist); APS Clinics' psychiatrist progress notes; a radiology report from Plaintiff's right foot; a pulmonary medical report; and a CT scan from Plaintiff's cervical spine. Tr. 92 (ref. to 334-86; 579-89; 590-606; 607-10; 948-94; 1048-75; 1263-67; 1268-796; 1277-80; 1317).

At the conclusion of the step two analysis, the ALJ stated:

> the limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.
> Tr. 92-93.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P. App. 1, and proceeded to determine Plaintiff's RFC. Tr. 93-94. The ALJ stated that, in formulating the RFC, she had to consider all impairments, including those that were non-severe (Tr. 91), and that her findings at step two regarding Plaintiff's mental functioning were also considered. The ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), and had the capacity to perform the following tasks:

> claimant could handle and finger frequently with the bilateral upper extremities. The claimant could climb ramps and stairs frequently, never climb ladders, ropes or scaffolds, stoop frequently, kneel frequently, crouch frequently, and crawl occasionally. The claimant could never work at unprotected heights, and operating a motor vehicle occasionally. He could work in humidity and wetness frequently, and in dust, odors, fumes, and pulmonary irritants frequently.
> Tr. 94.

No analysis regarding Plaintiff's mental impairments was included in the ALJ's analysis at step four, except for a sentence where the ALJ stated that she disagreed with the SSA's state consultants' mental disorders finding. Tr. 98. After concluding the RFC analysis, the ALJ deemed that Plaintiff could successfully adjust to other work that existed in significant numbers in the national economy, such as an electronic worker, laundry folder, and cashier. Tr. 99-100. The ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 100.

### A.      Plaintiff's Allegations of Error

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) his waiver of the right to representation was invalid and not knowing, and the lack of representation was prejudicial, (2) the ALJ erred in categorizing his mental impairments and some physical impairments as non-severe, (3) the ALJ failed to make a function-by-function assessment of Plaintiff's limitations, (4) the ALJ's RFC determination was not based on substantial evidence, (5) the ALJ's evaluation of Plaintiff's subjective symptoms was not based on substantial evidence, and (6) the ALJ's determination at step five of the sequential analysis was not supported by substantial evidence.[3] Because the Court finds that the first two arguments are dispositive of the instant appeals, there is no need to address the rest of Plaintiff's arguments.

### 1.      Right to Representation

Plaintiff claims that the ALJ was required to provide him with a notice explaining (1) the benefits of retaining counsel, (2) the fee arrangement, if any, and (3) the statutory 25% withholding limitation on attorney's fees.[4] Docket No. 11 at p.15. He further posits that he did not knowingly waive his right to representation. Id. And that the ALJ's line of inquiry was "superficial." Id. at 16. Although there is no constitutional right to counsel at a social security hearing, "[a claimant] does have a statutory and regulatory right to be represented should [he or she] choose to obtain counsel." Alford v. Saul, 417 F.Supp.3d 125, 136 (D. Conn. Sept. 30, 2019) (quoting Lamay v. Comm'r of Social Sec., 562 F.3d 503, 507 (2d Cir. 2009)). See also 42 U.S.C. § 406(c). The SSA, however, has a statutory and regulatory obligation to notify the claimant of his or her options for

---

[3]      Much of Plaintiff's brief does not contain record citations to support his allegations and at times refers to parts of the record that are in Spanish. See e.g., tr. 19-20. The Court went out of its way to adjudicate Plaintiff's challenges to provide him with a fair review process.

[4]      Although the record contains a Claimant's Appointment of a Representative form signed by Plaintiff and his counsel, which is dated March or April 2021 (the document is blurry as to the month), the SSA did not receive said document until after the hearing before the ALJ, on September 8, 2021. Docket No. 16 at p. 3. We thus assume Plaintiff had not retained counsel at the time of the hearing before the ALJ.

obtaining representation, and the availability of organizations providing legal representation free of charge for qualifying claimants. 42 U.S.C. § 406(c); 20 C.F.R. § 404.1706. Claimants can nonetheless waive their right to representation. Moran v. Astrue, 569 F.3d 108, 113 n.1 (2d Cir. 2009).

Prior to the hearing, the SSA sent Plaintiff a letter acknowledging his request for a hearing before an ALJ. Tr. 674-676. The notification explained Plaintiff's right to have representation, such as an attorney, how to choose a representative, the benefits of being represented, the fee that the representative may charge (which is subject to the SSA's approval), and a list of organizations Plaintiff could contact to secure free legal aid. Tr. 678-85. At the hearing, the ALJ discussed the above notice with Plaintiff. The discussion proceeded as follows:

> **ALJ**: Secondly, as I indicated, I see that you're not represented by an attorney or anyone else identified to represent you. When we received your case for the first time in the office, we wrote you a letter, letting you know your rights to representation. Along with that letter, we also included a sheet with phone numbers of several groups that could help you to obtain legal representation. There was also information about free legal services that was available to you. Did you receive that letter and notification?
> **Plaintiff**: Yes.
> **ALJ**: OK, and did you understand the information that the letter contained? Specifically, the information regarding your right to have a representative?
> **Plaintiff**: Yes.
> **ALJ**: OK. And do you wish to continue with or without representation?
> **Plaintiff**: Without representation.
> **ALJ**: OK. Then, I want the record to reflect that the claimant has waived his right to representation.

Tr. 109-110.

"In a typical case, when a claimant has been given names of legal service providers, a waiver obtained by an ALJ can withstand judicial review if the transcript shows that the ALJ confirmed the claimant's understanding of the right to representation by an attorney or non-attorney." Alford, 417 F.Supp.3d at 139 (citations omitted). See also Rutkowski v. Astrue, 368 Fed. App'x 226, 229 (2d Cir. 2010) (claimant knowingly waived his right to representation after the ALJ verbally told claimant of his right to representation and the availability of free legal services). Such was the case here. When questioned by the ALJ, Plaintiff responded that he understood the information about free legal services that was included in the letter sent by the agency and asserted that he knew

8

about his right to have a representative. When the ALJ questioned whether he wanted to continue with the hearing with or without representation, he chose to continue without legal aid.[5] Tr. 110.

Plaintiff relies in Frank v. Charter, 924 F. Supp. 416, 420 (E.D.N.Y. 1996), to support his allegations. In Frank, the district court concluded that the notifications that claimant received were inadequate insofar as they did not advise the claimant of the benefits of counsel or the possibility of free legal services or a contingency arrangement. 924 F. Supp. at 425-26. Frank, however, is unpersuasive as it was overruled by the Second Circuit when it held that the SSA was not required to provide claimant notice beyond the statute-imposed requirements. Lamay, 562 F.3d at 305. The SSA in this case complied with its statutory obligation to notify Plaintiff of his right to representation. The agency provided options for securing a representative and the availability of organizations that provide legal services free of charge to qualifying claimants prior to the hearing. See Lamay, 562 F.2d at 507; 42 U.S.C. § 406(c); 20 C.F.R. § 404.1706. Tr. 678-85. The ALJ also discussed with Plaintiff his right to counsel at the hearing before obtaining a waiver. See Evangelista v. Sec. of Health & Human Serv., 826 F.2d 136, 142 (1st Cir. 1987) (claimant made a "knowingly and intelligent waiver of his right to representation after having been informed, both orally and in writing, of his right to counsel.").

Plaintiff further contends that the ALJ failed her duty to protect a *pro se* litigant because Plaintiff "told the ALJ he had been unable to obtain his psychologist's progress notes and the ALJ did not subpoena the notes." And that the ALJ ignored his request to be examined by a psychiatrist. Docket No. 11 at 17. The ALJ has a heighten responsibility to overlook the development of the record in a case where a claimant is acting *pro se*. See Torres Pagán v. Berryhill, 899 F.3d 54, 59 (1st Cir. 2018); Currier v. Sec. of Health, Ed. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980); 20 C.F.R § 404.944 (the ALJ looks "fully into the issues" at the hearing). Likewise, the ALJ, in developing the medical history of the claimant, must make every reasonable effort to obtain all evidence from the claimant's treating physicians. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. §

---

[5] Plaintiff suggests in an undeveloped matter that his waiver was "not knowingly." Docket No. 11 at p. 15. Issues averted in a perfunctorily manner are deemed waived. Citizens Awareness Network, Inc. v. U.S. Nuclear Regulations Comm'n, 59 F.3d 284, 293-94 (1st Cir. 1995). In any event, as discussed, Plaintiff was informed of his right to counsel and was questioned whether he received relevant information to securing representation. Moreover, the ALJ asked whether he wanted to proceed with or without representation and he chose the latter. His mental examinations showed that he had logical thought process and average intellect. Tr. 473-74, 492-93, 499-500, 506-07, 547-48, 608-09. And he held job positions that required "good comprehension and communicative skills." See Evangelista v. Sec. of Health & Human Serv., 826 F.2d 136, 142 (1st Cir. 1987) (finding that claimant had knowingly and intelligently waived his right to representation); Tr. 117-18, 226.

404.1512(b)(1). The regulations require the ALJ make a request for evidence and, if that does not work, to make a follow up request. See 20 C.F.R. § 404.15112(b)(1)(ii). The ALJ in this case made, not one, but two requests for the psychologist's progress notes.[6] Tr. 115, 1333. Plaintiff conceded that fact during the hearing. Tr. 115. And when asked whether he had any objections to the evidence in the record he responded in the negative and did not call attention to the missing records. Tr. 110-112. See Tammy Lynn W.M. v. Berryhill, 2019 WL 276844, at *5 (D. Me. Jan. 20, 2019) (listing several reasons why the ALJ did not err in obtaining missing evidence from the claimant's physicians, among them that the claimant did not refer to the records at the hearing). Plaintiff also contends that the ALJ ignored his request for a psychiatric evaluation. Docket No. 11 at 17. However, he fails to point the Court to any evidence that he made such a request. Id. The Court will not ferret through the extensive record. Tutor Perini Corp. v. Banc of Am. Sec. LLC, 842 F.3d 71, 85 (1st Cir. 2016). That claim is thus waived. Id. And, in any event, the record contains evidence that in 2019 the SSA sent Plaintiff to a psychiatric consultative examination with Dr. Juanita Morales Guzmán.[7] Tr. 514-21.

Plaintiff charges the ALJ with making a superficial inquiry by not asking Plaintiff to discuss in depth his living conditions, family, duties at his jobs, daily activities, and medical conditions, limitations, and pain. Docket No. 11 at 16. Also, that the ALJ failed to assist him in asking questions to the VE and explaining the impact of the date last insured ("DLI"). Id. The record, however, proves otherwise. The ALJ did ask questions pertaining to Plaintiff's household composition (Tr. 115-16), education (Tr. 116), past jobs (Tr. 116-20), health conditions (Tr. 121-23, 125-29, 135), physical therapy (Tr. 124), medications (Tr. 123-24, 129, 135), and treatments (Tr. 124-25, 127, 129). After asking the VE several questions related to Plaintiff's limitations and available jobs, the ALJ asked Plaintiff if he "ha[d] any other questions for the [VE]." Tr. 132. Plaintiff sought clarification of words used by the VE and, when asked for a second time whether he had additional questions for the VE, he responded in the negative. Tr. 133. As to the impact of the DLI, the SSA explained twice that Plaintiff had to establish disability prior to his date last

---

[6] Before concluding the hearing, the ALJ mentioned that the agency would try to obtain the evidence from the psychologist at APS Clinic. And that if the information was sent to the agency, it would send it to Plaintiff for his review. If the progress notes were not obtained, the ALJ would proceed to issue her decision. Plaintiff agreed. See Tr. 115, 133-34.

[7] Generally, the SSA requests a consultative examination when it has made every reasonable effort to obtain evidence from a claimant's own medical sources. 20 C.F.R. § 404.1512.

insured, when it sent the Notice of Hearing letter and at the hearing before the ALJ. (Tr. 112, 701). At the hearing, the ALJ explicitly stated that the relevant time in the case was from 2014 to 2020. Plaintiff understood. See Tr. 112, 121. The Court thus finds that, although Plaintiff was *pro*, remand is unwarranted based on Plaintiff's waiver of legal representation and the ALJ's performance.

### 2. Plaintiff's Mental Conditions

Plaintiff avers that the ALJ erred in finding that his mental impairments were not severe and by failing to address the credited mental functional limitations in the RFC formulation. Docket No. 11 at pp. 17-22. Having examined the evidence, the Court finds that the ALJ's conclusion regarding Plaintiff's mental condition is not supported by substantial evidence. This error is dispositive because the ALJ must consider all physical and mental evidence when formulating a claimant's RFC.

#### a. Severity of Plaintiff's Mental Health

At step two of the sequential analysis, the ALJ concluded that Plaintiff's major depressive disorder, ADHD, generalized anxiety disorder, and panic attacks were non-severe. Tr. 91-92. And that these caused Plaintiff no more than mild limitations in any of the four functional areas of mental functioning. Tr. 92. However, a review of the record reveals that the ALJ's decision was based primarily on medical records of non-mental health physicians, a single APS Clinic progress note, and Plaintiff's Function Reports. Tr. 92 ref. to 214-21, 230-37, 579-89, 590-606, 607-10, 984-94, 334-86, 1048-75, 1263-67, 1268-76, 1277-80, 1312-16, 1317. Taken together, these sources of medical records cannot reasonably and adequately support a conclusion that Plaintiff's mental impairments were non-severe. Aponte-Morales v. Comm'r of Soc. Sec., 2021 WL 3879451, at *5 (D.P.R. Aug. 31, 2021) (holding that the ALJ's finding of a non-severe mental impairment was erroneous when based on non-mental health medical records and a non-treating state agency consultant who failed to consider 21 months of the claimant's psychiatric treatment). As such, the ALJ's decision is insufficiently substantiated for the Court to affirm.

The ALJ's analysis regarding Plaintiff's four broad areas of mental functioning was, despite the availability of mental health medical files, primarily premised on medical files from physicians who routinely evaluated Plaintiff's non-exertional conditions and radiology reports. Tr. 92 ref. to 579-89, 590-606, 984-94, 334-86, 1048-75, 1263-67, 1277-80, 1317. Other than that, the ALJ relied on Plaintiff's self-assessment reports (the Function Report), an Internist who made a

diagnosis of depressive anxiety disorder, and a 2021 APS clinic psychiatrist's progress note that described Plaintiff's mood as "depressed and anxious" and his affect as "anxious."[8] Tr. 92 ref. to 214-21, 230-37, 607-10, 1268-76. Neither of the three sources include an opinion as to Plaintiff's mental condition. The ALJ gave equal weight to all medical files, whether related to mental health or not. Tr. 92. However, that there was substantial evidence of Plaintiff's mental health treatments during the period at issue that was not considered by the ALJ.

The relevant claim period here was from August 15, 2014 to December 31, 2020. In 2014, Plaintiff was treated by Dr. Jaime Ramos Couvertier, a psychiatrist and hypnotherapist, after being referred by Dr. Marylia Manzano Rivera due to a positive screening depression test.[9] Tr. 261. He was prescribed Zoloft. Tr. 292, 93. From February 29, 2016 until September 20, 2018, Plaintiff was treated by psychiatrist Dr. Rafael García Barcena. Tr. 387-482. Plaintiff reported feeling anxious, anguished, and not wanting to interact with people. Tr. 387, 389, 418. He was prescribed Lamictal and Trazodone. From January 2019 until May 2020, Plaintiff started treatment at the APS Clinic. Tr. 462-513, 523-78. By January 11, 2019, Plaintiff was diagnosed with generalized anxiety disorder, panic disorder without agoraphobia, and major depressive disorder recurrent episode severe. Tr. 512. Follow up evaluations from February, March, April, June, and August reveal that Plaintiff's diagnosis and treatment plan remained the same. Tr. 473-75, 489, 495-96, 502-03, 507-08. By October 18, 2019, Plaintiff was still diagnosed with depression and anxiety. Tr. 577. In 2020, Plaintiff's diagnosis of depression and anxiety was confirmed in three different evaluations. Tr. 535, 549, 563. On November 26, 2019, Plaintiff was examined by SSA consultative examiner psychologist Juanita Morales Guzmán. Tr. 514-22. Dr. Morales Guzmán's psychological report diagnosed Plaintiff with ADHD, depression, and anxiety with a "good prognosis regarding his mental and emotional status at the time of the interview." Tr. 519-21. State agency mental consultants examined Plaintiff in 2020. They noted that the evidence established depression and that Plaintiff had the capacity to understand, remember, and execute simple instructions with minimal interruptions and he was able to stay focused for at least two-hour periods and interact with others. Tr. 630-36, 650-57.

---

[8] When formulating her "Paragraph B" analysis, the ALJ collectively cited to the evidence, making it difficult to pinpoint what specific evidence she used to support her findings. See Tr. 92.

[9] Plaintiff visited Doctor Jaime Ramos Couvertier since the year 2019. However, the Court considers evidence of visits during the relevant claim period. See Tr. 262, 270.

The ALJ stated that Plaintiff's "mental impairments … did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe" while generally referencing evidence from Dr. Ramos Couvertier, Dr. García Barcena, the APS Clinic, and Dr. Morales Guzmán. Tr. 91-92. But the ALJ failed to incorporate the mental health evidence discussed above in her analysis of the Paragraph B criteria. The ALJ's decision on the severity of Plaintiff's non-severe mental impairments was significantly based on non-mental health evidence. Thus, the ALJ's assessment is lacking. See e.g., Aponte-Morales, 2021 WL 3879451, at *7; Tejedor-Dávila v. Comm'r of Soc. Sec., 2020 WL 4574922, at *8 (D.P.R. Aug. 6, 2020) (citing Nguyen v. Charter, 172 F.3d 31, 35 (1st Cir. 1999)) (an ALJ is not at liberty to "ignore medical evidence"); 20 C.F.R. § 404.1520(a) (all evidence in the record must be considered when making a determination as to claimant's disability).

### b. The Mental RFC Determination

An ALJ's error at step two could be considered harmless if the ALJ finds that there is at least one severe impairment and proceeds to step three. Rodríguez-Feliciano v. Comm'r of Soc. Sec., 2022 WL 3643949, at *3 (D.P.R. Aug. 24, 2022), Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723, at *4 (D.P.R. Sept. 23, 2021) (same); Aponte-Morales, 2021 WL 3879451, at *8 (same); Smith v. Saul, 2019 WL 5957294, at *3 (D.N.H. Nov. 13, 2019) (same). The ALJ here continued the analysis until step five. However, contrary to the case law discussed above, "the ALJ's flawed analysis at step two in this case was not cured by a thorough analysis of the effects that Plaintiff's mental impairment had on Plaintiff's RFC." Aponte-Morales, 2021 WL 3879451, at *8. Indeed, the ALJ acknowledged her duty to consider both severe and non-severe impairments in the formulation of the RFC. Tr. 91. And the ALJ stated that she considered all of Plaintiff's symptoms in the RFC analysis. Tr. 94. But the record reflects otherwise. A boilerplate assertion of her duty without analyzing impairments in the RFC is not enough. See Smith, 2019 WL 5957294, at *4. The ALJ failed to address Plaintiff's anxiety, depression, AHDH, and panic attacks in her RFC determination. The decision omits any reference to Plaintiff's mental health conditions except to say that she disagreed with the state agency mental consultants.[10] Tr. 98. The error at step two of the sequential process was not cured.

---

[10] The Commissioner concedes that Plaintiff's mental RFC challenge has "slightly more traction" than her other challenges. Docket No. 16 at p. 11.

Although an ALJ need not find a limitation for each impairment, each impairment "must at the very least be considered in the assessment of the RFC." Aponte-Morales, 2021 WL 3879451, at *8. See also Leech v. Berryhill, 2017 WL 2817023, at *4 (D. Me. June 28, 2017) (requiring that all of a claimant's medically determinable impairments, including those that are non-severe, be considered in assessing functional restrictions at step 4); Cooley v. Saul, 2020 WL 5406044, at *4–5 (D.N.H. Sept. 9, 2020) (ALJ's failure to consider non-severe impairments when addressing the RFC is reversible error); Lavoie v. Colvin, 2016 WL 3554963, at *3 (D. N.H. June 24, 2016) (remanding when ALJ failed to consider non-severe impairments in addressing the RFC); McMichael v. Colvin, 2016 WL 4556768, at *4 (M.D.N.C. Aug. 31, 2016) (the ALJ's failure to account for mild limitations in the RFC requires remand). The ALJ's failure to even mention Plaintiff's depression while formulating the RFC in this case is fatal. See Smith, 2019 WL 5957294 at *4-5 (citing Lavoie, 2016 WL 3554963, at *3-4 (holding that ALJ's failure to mention claimant's depression at the RFC stage suggests it was "impermissibly dropped" from the analysis and thus the RFC decision was not supported by substantial evidence)). A remand is warranted.

## IV. Conclusion

The ALJ's determination was not based on substantial evidence: the conclusion at step two that Plaintiff's mental conditions were non-severe was based primarily on non-mental health medical records. Such an error was not harmless. The ALJ failed to consider Plaintiff's mental impairments at the RFC determination. Having concluded that a remand is warranted on the foregoing grounds, there is no need to address the rest of Plaintiff's arguments on appeal.

For the reasons stated above, the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further administrative action consistent with this opinion.

Judgment to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of March 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge